FRANKLIN et al. v. PHILADELPHIA & R. RY. CO.

(District Court, · E. D. Pennsylvania. January 27, 1913.)

No. 1,650.

COMMERCE (§ 89*)—ACTIONS TO RECOVER EXCESSIVE CHARGES—INTERSTATE COMMERCE ACT—JURISDICTION OF COURTS.

A consignee of property shipped in interstate commerce cannot maintain an action against the carrier to recover because of excessive freight charges' exacted on such shipments, except for the enforcement of an award of damages made by the Interstate Commerce Commission under Interstate Commerce Act Feb. 4, 1887, c. 104, § 16, 24 Stat. 384 (U. S. Comp. St. 1901, p. 3165), as amended by Act June 29, 1906, c. 3591, § 5, 34 Stat. 590 (U. S. Comp. St. Supp. 1911, p. 1301), in favor of plaintiff, and a court is not given primary jurisdiction of such an action by the fact that the Commission, on complaint of the shippers, to which proceeding plaintiff was not a party, has made a finding that the rate was excessive, and an award of damages to such shippers.

[Ed. Note.—For other cases, see Commerce, Dec. Dig. § 89.*

Jurisdiction of federal courts of suits under Interstate Commerce Act, see note to Bailey v. Mosher, 11 C. C. A. 318.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

At Law. Action by Henry G. Franklin and others against the Philadelphia & Reading Railway Company. Answer to rule to plead. Rule discharged, and action dismissed.

Henry Baur, of Philadelphia Pa., for plaintiffs.

Wm. L. Kinter, of Philadelphia, Pa., for defendant.

THOMPSON, District Judge. This is an action in trespass, in which the plaintiffs seek to recover from the defendant the excess of freight charges alleged to have been paid by the plaintiffs to the defendant upon ice shipped from Gouldsboro, Pa., and other points taking the same rate over various connecting interstate carriers to Philadelphia, Pa., during the period from April 18, 1907, to August 20, 1909. The rate charged by the defendant was $1.40 per ton. The rates in question were held to be unreasonable by the Interstate Commerce Commission on November 14, 1910, in a proceeding brought by the Mountain Ice Company, which was the plaintiffs' consignor, and other ice companies, against the defendant railroad company and other railroads. The original complaint in that proceeding was filed May 5, 1908, without demand for reparation, and on November 6, 1908, a supplemental petition was filed by the Mountain Ice Company, praying for reparation. In the report of the Interstate Commerce Commission, a copy of which is attached to the plaintiffs' statement of claim (21 Interst. Com. Com'n R. 45), the rate was declared to be unreasonable, and a reasonable rate declared to be $1.20 per ton on ice shipped in box cars and $1.35 per ton on ice shipped in refrigerator cars, and reparation was awarded to the complainants. It is alleged that, in pursuance of the order, the defendant, in conjunction with the connecting carriers, reduced the rate, by tariff effective May 26, 1911, from $1.40 to the rates found by the Commission to be reasonable. The plaintiffs claim the difference between the amount paid during the period mentioned at the then established rate of $1.40 per ton and the amount which should have been paid at the rate found reasonable by the Commission, namely, $1.20 per ton on ice shipped in box cars and $1.-35 on ice shipped in refrigerator cars. The plaintiffs were not parties to the proceedings before the Interstate Commerce Commission, and no award of reparation was made in their favor. On January 23, 1912, the defendant was ruled to plead, and on January 29, 1912, filed an answer setting forth:

"That it cannot be required to file a plea in the above-entitled case for the reasons following, to wit: (1) That plaintiffs have procured no award of reparation in their favor by the Interstate Commerce Commission by reason of the matters and things set forth in the statement of claim filed. (2) That the Interstate Commerce Commission has awarded to parties and persons other than plaintiffs the sum alleged by plaintiffs to be due to them from defendant upon the cause of action set forth in the statement of claim filed. (3) That this court is without jurisdiction in the premises in advance of an award of reparation to plaintiffs by the Interstate Commerce Commission"

—and praying that the rule to plead be vacated and that suit be dismissed for want of jurisdiction in this court.

It does not appear to be disputed that the rates found unreasonable by the Interstate Commerce Commisson are the identical rates charged

the plaintiffs by the defendant on its shipments of ice, and the question is therefore squarely presented whether a suit may be brought, based upon the order of the Interstate Commerce Commission made in the proceedings by the Mountain Ice Company, to which the plaintiffs were not a party and in which no award was made in their favor. The contention of the plaintiffs is that the action is properly brought by reason of the provisions of section 9 of the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 382 [U. S. Comp. St. 1901, p. 3159]), which provides that a person claiming to be damaged may either make complaint to the Commission or bring a suit in any District or Circuit Court of the United States, but shall not have the right to pursue both of said remedies, and must in each case elect which one of the two methods of procedure he will adopt, and section 22, which provides that nothing in the act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of the act are in addition to such remedies. It is urged that, inasmuch as the Interstate Commerce Commission has already passed upon the reasonableness of the rates and has awarded to other parties reparation for the excess, the present action will lie, because the Commission has passed upon the only question necessary to preserve uniformity of administration, which is one of the primary objects of the act, and because the ascertainment of the amount of damages of the plaintiffs is a mere question of mathematical calculation, upon which it is not essential to uniformity that the Commission should make a finding and award.

It has been settled by numerous decisions of the Supreme Court, beginning with Texas & Pacific Railway Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075; that where the claim of a shipper for damages is based upon alleged unreasonableness of rates either then existing or rates which have been altered or upon any question as to rates, regulations, and practices as to which it is essential that there shall be uniformity of decision, the courts are without primary jurisdiction to entertain the action. Southern Railway Co. v. Tift, 206 U. S. 429, 27 Sup. Ct. 709, 51 L. Ed. 1124, 11 Ann. Cas. 846; Baltimore & Ohio R. R. Co. v. Pitcairn Coal Co., 215 U. S. 481, 30 Sup. Ct. 164, 54 L. Ed. 292; Robinson v. Baltimore & Ohio R. R. Co., 222 U. S. 506, 32 Sup. Ct. 114, 56 L. Ed. 288. As was said in the Abilene Case:

"The independent right of an individual originally to maintain actions in courts to obtain pecuniary redress for violations of the act conferred by the ninth section must be confined to redress of such wrongs as can, consistently with the context of the act, be redressed by courts without previous action by the Commission, and therefore does not imply the power in a court to primarily hear complaints concerning wrongs of the character of the one here complained of. Although an established schedule of rates may have been altered by a carrier voluntarily or as the result of the enforcement of an order of the Commission to desist from violating the law, rendered in accordance with the provisions of the statute, it may not be doubted that the power of the Commission would nevertheless extend to hearing legal complaints of and awarding reparation to individuals for wrongs unlawfully suffered from the application of the unreasonable schedule during the period when such schedule was in force."

In construing the provisions of the act in relation to proceedings brought before the Interstate Commerce Commission, the court held:

"Power was conferred upon the Commission to hear complaints concerning violations of the act, to investigate the same, and, if the complaints were well founded, to direct, not only the making of reparation to the injured persons, but to order the carrier to desist from such violation in the future. In the event of the failure of a carrier to obey the order of the Commission, that body, or the party in whose favor an award of reparation was made, was empowered to compel compliance by invoking the authority of the courts of the United States in the manner pointed out in the statute, prima facie effect in such courts being given to the findings of fact made by the Commission."

In the case of Morrisdale Coal Co. v. Pennsylvania Railroad Co., 183 Fed. 929, 106 C. C. A. 269, where the question was whether a suit could be brought in the Circuit Court to recover damages arising from an alleged discriminatory practice in the distribution of coal cars in time of shortage, it was held by the Circuit Court of Appeals of this circuit that under the decision in the Abilene Oil Case no action would lie without a previous finding by the Commission upon a question of the alleged ·discriminatory practice. The question as to whether a finding by the Commission of damages was beyond its power in such a case was not decided; but there seemed to be no doubt in the mind of Judge Lanning, who rendered the decision, that, if the question involved were one of rates, and the damages claimed would be the result of a mere mathematical calculation, recourse must be had to the Commission, not only to pass upon the question of the unreasonableness of rates, but to award damages, if any were found to have arisen. And upon the right of action in suits for damages Judge Lanning held that:

"If, except for the act to regulate commerce, the Morrisdale Coal Company would have had a common-law right of action against the Pennsylvania Railroad Company for the damages here claimed, that right was not merely suspended while the old rule of distribution was in operation, but was taken away for all time, and the Coal Company given a substituted right of procedure before the Commission, at any time within one year after June 29, 1906, for a determination by the Commission of the question whether the rule complained of was discriminatory, unless, indeed, the Commission has no power, under the act, to determine whether a rule for the distribution of cars is discriminatory."

In the case of Jacoby & Co. v. Pennsylvania Railroad Co., 200 Fed. 989, recently decided in this court, in passing upon the question whether, after a finding by the Commission of a discriminatory practice in the distribution of coal cars in time of shortage, the Commission had power under the act to award damages, it was held:

"It may be stated as established that the act to regulate commerce was intended by Congress to afford an effective and comprehensive means for redressing wrongs resulting from unjust discriminations and undue preference by carriers, and that a shipper cannot maintain an action at common law for damages arising from such wrong, but must first make his complaint to the Interstate Commerce Commission; in other words, his common-law remedy is abrogated by the procedure established by the act to regulate commerce. It was the evident intent of Congress that the procedure established by the act should be substituted for that which had theretofore obtained at common law. Section 9 provides that a person claiming damages must 'elect which one of the two methods of procedure herein provided for' he will adopt, and

the Supreme Court has held that the right to originally maintain actions in court for violations of the act conferred by this section must be confined to redress of such wrongs as can, consistently with the context of the act, be redressed by courts without previous action by the Commission. The method of procedure referred to in section 9 is clearly outlined in sections 13, 14, 15, and 16 of the act, and, as said by Judge Lanning in the Morrisdale Case, the procedure of the Commission in making the assessment constitutes no part of a judicial proceeding."

In the case at bar it must be assumed that the plaintiffs have elected which one of the two methods of procedure provided for by the act they would adopt. If the action is intended under section 9 as a "suit in his or their own behalf for the recovery of the damages for which such common carrier may be liable under the provisions of this act," I think their action must fall, because it is not, in the language of the court in the Abilene Oil Co. Case, "confined to redress of such wrongs as can, consistently with the context of the act, be redressed by courts without previous action by the Commission." If they have chosen the procedure outlined in the act, they are outside of its provisions, because they have not, in the language of section 9, made "complaint to the Commission as hereinafter provided for."

Excepting the right to bring an original action in the courts, which is limited under the decision in the Abilene Case to those cases which require no previous action by the Commission, the only remedy provided for the recovery of money damages of the character demanded in this suit is under the provisions of section 16, which provides as a prerequisite to suit a determination by the Commission that the "party complainant is entitled to an award of damages under the provisions of this act for a violation thereof," in which case it is provided that "the Commission shall make an order directing the carrier to pay to the complainant the sum to which he is entitled on or before a day named." Section 16 then provides that, upon the noncompliance with an order for payment of money, suit may be brought in the Circuit Court by "petition setting forth briefly the causes for which he claims damages and the order of the Commission in the premises," which findings and order of the Commission are made prima facie evidence of the facts therein stated. The section further provides:

"All complaints for the recovery of damages shall be filed with the Commission within two years from the time the cause of action accrues, and not after, and a petition for the enforcement of an order for the payment of money shall be filed in the Circuit Court or state court within one year from the date of the order, and not after."

It is apparent, therefore, from the language of the act, that, where proceedings have been had by complaint before the Commission, a suit for the recovery of damages must be based upon an order of the Commission for the payment of money. I think the conclusion arrived at is sustained by the decision of the Supreme Court in the case of Robinson v. Baltimore & Ohio Railroad Co., 222 U. S. 506, 32 Sup. Ct. 114, 56 L. Ed. 288. In that case suit was brought in a state court of West Virginia to recover the excess of freight charges alleged to have been paid by a shipper upon coal loaded into cars from wagons above the rates charged other shippers whose coal was loaded from tipples. The plaintiff claimed to recover upon the ground that the

rate in question had been found to be unjustly discriminatory by a decision of the Interstate Commerce Commission, and the railroad company had been directed to desist from its enforcement. The plaintiffs contended that the court should take judicial notice of the decision of the Commission. Upon this point they were not sustained by the Supreme Court. The court held:

"The result, however, would have been the same, had the decision been properly before the court. An examination of it discloses that it did not contain any finding or direction as to what, if any, reparation should be made because of prior exactions of the rate which it condemned. It did find that the complaining party in that proceeding had been injured by the refusal of the railroad company to furnish cars on certain occasions for the shipment of coal, and did direct that reparation therefor be made; but that is without bearing here."

Referring to sections 22 and 9, in its opinion, the court held:

"Of course, the provision in section 22, as also the provision in section 9, must be read in connection with other parts of the act, and be interpreted with due regard to its manifest purpose, and, when that is done, it is apparent that neither provision recognizes or implies that an action for reparation, such as is here sought, may be maintained in any court, federal or state, in the absence of an appropriate finding and order of the Commission. Texas & Pacific Railway Co. v. Abilene Cotton Oil Co., supra [204 U. S.] 442, 446 [27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075]."

Since the argument of the case at bar, the question in substantially similar form came before the District Court for the Eastern District of Wisconsin, and a similar conclusion was reached in a well-considered opinion by Geiger, District Judge, in the case of National Pole Co. v. N. W. Ry. Co., 200 Fed. 185.

My conclusion is that the present action cannot be maintained, because this court has no power to primarily hear complaints concerning the redress of wrongs based upon unreasonable rates, as to which there must be previous action by the Commission; and, upon the other hand, it cannot be maintained as a suit to recover money damages upon a previous complaint to the Commission, because it is not based upon an order of the Commission for the payment of money, as provided by section 16 of the act, and, without an award of reparation to the plaintiffs by the Commission, this court is without jurisdiction. In view of this conclusion, it is not necessary to consider the defendant's second reason why it should not be compelled to file a plea.

It is ordered that the plaintiff's rule to file a plea be vacated, and that suit be dismissed.